

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**August 23, 2018 16:02**

By: DANIEL G. MORRIS 0040449

Confirmation Nbr. 1475678

DAVID H. LAM                                        CV 18 902688

    vs.
                                                    **Judge:** PAMELA A. BARKER
CITY OF CLEVELAND

**Pages Filed:** 18

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| MR. DAVID H. LAM<br>37219 TAIL FEATHER DR.<br>NORTH RIDGEVILLE, OHIO  44039<br><br>            Plaintiff,<br><br>-VS-<br><br>THE CITY OF CLEVELAND<br>C/o LAW DIRECTOR<br>DEPARTMENT OF LAW<br>601 LAKESIDE AVENUE<br>CLEVELAND, OHIO  44114<br>            Defendant. | JUDGE:<br><br>CASE NO.:<br><br>**COMPLAINT FOR MONEY DAMAGES ONLY**<br><br>(JURY DEMAND ENDORSED HEREIN) |

Now come the Plaintiff, Mr. David H. Lam (hereinafter, "Lam" or "the Reservist"), through Counsel and pleads and alleges as follows for his Complaint:

PARTIES

1. The Defendant, the City of Cleveland (hereinafter, "Cleveland") is a chartered municipal corporation formed, operated and governed under the Constitution and laws of Ohio. It is the county seat of Cuyahoga County, Ohio. It is governed and operates through its elected and appointed officials; the Mayor, Cleveland City Council and its officers, commissioners, agents and employees. Under the laws and constitution of Ohio, it is a sovereign, municipal corporation. The principal place of business of the government of Cleveland, concerning the gravamen of this complaint, is the address

listed above, Cleveland City Hall. Cleveland City Hall is the main place of business of Cleveland's Mayor, City Council, Law Department and the Department of Public Safety (which includes the Division of Police).

2. The Plaintiff, Mr. David H. Lam (hereinafter "Lam"), is a private individual who currently resides at the address listed above. Since 2008 he has been employed by Cleveland as an officer in the Cleveland Police Department. Currently Lam is a Sergeant in the Cleveland Police Department. Since 2004 he has also been a drilling member of the Ohio Army National Guard. Currently Lam is a decorated infantry Captain in the Ohio Army National Guard. Lam has deployed twice to a combat zone during the Global War on Terror. On his last deployment Lam's unit was assigned to train Jordanian military personnel. U.S. forces in Jordan assigned to train Jordanian military and security personnel suffered at least 3 killed in action by terrorist attacks during the year of his deployment by "radicalized" Jordanian military or security personnel. Lam earned the "[Combat Infantry Badge]" on his [last deployment[s]].

JURISDICTION

3. In accordance with the Ohio Revised Code "Chapter 5903: Veterans' Rights", Section 5903.02, this Court has original jurisdiction over the present matter. Cleveland has continuously denied the Plaintiff a right or benefit of his uniformed service in the Ohio Army National Guard that is one of his reinstatement, reemployment and employment rights or benefits under R.C. 5903.02, (further defined in the text of 38 U.S.C.A. 4303 and in 38 U.S.C.A. 4301, *et. Seq.*, popularly known as "USERRA,") since 2008. Cleveland has specifically denied Lam his annual

paid military leave benefit under R.C. 5923.05(A) (the "training bonus") since 2008 and into the foreseeable future) as further described in detail below.  The parties all reside and are located in Cuyahoga County, Ohio.  Most of the relevant conduct described in the following paragraphs of all parties has taken place inside of Ohio, mostly in Cuyahoga County, Ohio.

## FACTS OF THE CONTROVERSY

4. R.C. 5903.02 and USERRA compel civilian employers to deem military reservists to be on an authorized "leave of absence" or "furlough" from their civilian employment while performing their reserve military duties and training in times of peace or war.  The reservist employee performing his reserve military duties and training consisting of monthly weekend drills and two weeks of annual training is in a state of "deemed military leave" under Federal and Ohio law during this time.  These laws therefore make it wrong and unlawful for any employer to discipline reservist employees for missing work to attend reserve military training or service.  These laws further make it illegal for employers to discriminate against persons because of their service in the reserve components of the uniformed services, including the National Guard.  These laws further state that the Congressional intent of the Act, *inter alia*, is for the Federal Government to be a "model employer in carrying out the provisions of this chapter." These laws do not supersede or nullify a state law that establishes a benefit for reservists more beneficial than, or in addition to, a benefit provided by R.C. 5903.02 (and defined in USERRA).  R.C. 5903.02 and USERRA supersede any local law or ordinance that

reduces, limits or eliminates in any manner any benefit provided by R.C. 5903.02 (and further defined in USERRA).

5. Since May 12, 1917 (several months before the U. S. entered WWI), there has been a Federal statute, 5 U.S.C. §6323(a), that compels Federal Government civilian employers to pay their employees who are also military reservists their civilian pay for the first fifteen (15) days of deemed military leave they have to take, every calendar year, while performing their reserve military duties and training, in war or peace. This law creates Federal paid military leave for reserve duty as an employment benefit for Federal workers who are also drilling military reservists. This law makes the payment of Federal paid military leave (hereinafter "PML") for reserve duty the obligation of the civilian employer. It is an employment benefit of the individual reservist provided by the Federal civilian employer, and not military pay of the reservist. Federal reservist employees receive this PML in addition to their military pay for this reserve military service. They do not suffer any deduction from this PML for their absence from work. They do not suffer any offset to this PML for the military pay the earn while accruing the PML.

6. Since July 29, 1931 (more than eight years before the start of WWII, and more than a decade before Pearl Harbor and America's entry therein) there has been an Ohio general statute creating paid military leave ("PML") in Ohio for public employees who are also drilling military reservists, modelled upon the Federal statute. The relevant provisions of the statute in its present version, R.C. 5923.05, create two (2) separate PML benefits for Ohio public employee reservists. The "training bonus" and the "differential pay supplement." The "training bonus" provision of the PML statute, R.C. 5923.05(A), compels public employers to pay their reservist employees an annual PML benefit

roughly equal to one month of their civilian pay for reservist employees who attend all of their scheduled reserve annual training. The reservist employees receive this bonus without any offset for the military pay they earn and receive during these same days of deemed military leave and without any deduction for their absence from their place of civilian work during these same days of deemed military leave. The training bonus does not pay extra for any Ohio reservist employees who perform more than twenty-two (22) days of military service in any one calendar year, due to either extended military training or to a deployment onto active duty.

7. The "differential pay supplement" is the second PML benefit of R.C. 5923.05. It is found in R.C. 5923.05(B). It applies to some reservist employees who perform more than 22 days of military service in one calendar year. It is a safety net for Ohio reservist public employees who are junior enlisted. Ohio reservist employees who are junior enlisted sometimes have a lower military rate of pay than their civilian rate of pay; sometimes it is much lower. If such a junior enlisted Ohio reservist public employee were ordered to a 9 or 12-month deployment (and some Ohio Army National Guard deployments have been historically 18 months or longer), that could subject that reservist (and his Ohio military family) to a great financial hardship. While that employee reservist would get both his civilian and military pay for the first month of this hypothetical deployment, due to the "training bonus" PML benefit, he would experience a financial hardship for the rest of the calendar year trying to live separately from his family on his smaller military paycheck. The "differential pay supplement" protects such Ohio reservist employees by paying them a monthly PML benefit equal to the difference between their monthly civilian pay rate and their monthly military pay rate (or $500.00,

whichever is less), for every month of extended military service (after the first) in each calendar year.

8. All Ohio state government agencies comply with this statute. All Ohio county government agencies comply with this statute. Many Ohio municipal government agencies comply with this statute. The law makes the payment of State paid military leave the obligation of the civilian public employer, as an employment benefit for public employees who are also drilling military reservists. State paid military leave is a reemployment and employment benefit of the individual reservist provided by the Ohio public civilian employer, and not military pay of the reservist. Every state in the union currently has a similar law, as does the District of Columbia. Forty-four (44) of the states, including Ohio, offer fifteen (15) days or more of PML annually. Ohio is one of eleven (11) states that offer more than fifteen (15) days of PML annually.

9. Cleveland has chosen not to comply with this Ohio general statute. In 1982 it enacted the predecessor ordinance of the current §171.57 of Cleveland's Municipal Codified Ordinances, titled "Military Service Leave of Absence; Benefits During Service." This ordinance "entitles" its employees to a "leave of absence", if they are also military reservists, to perform "field training" or "active duty." The ordinance does not pay drilling Ohio military reservists their "training bonus." The ordinance only directs the City to pay its reservist employees a PML benefit similar to the "differential pay supplement." This ordinance is therefore in direct conflict with the State paid military leave statute. The Plaintiffs allege that the Ohio and Federal statutes were enacted long before the earliest version of the Cleveland Ordinance was proposed, let alone enacted. The Ordinance has the practical effect of reducing or eliminating the PML benefit for

many of its employees who are drilling military reservists because it eliminates the "training bonus" (which benefits all Ohio drilling reservists) and many or most of Cleveland's reservist employees do not qualify for the "differential pay supplement." Cleveland wrongfully evades its duty to provide the "training bonus" to many of its drilling military reservist employees by this countervailing Cleveland military leave ordinance.  Cleveland has continued this policy throughout the Global War on Terror, even after its policy makers witnessed drilling Ohio military reservists mobilizing to active duty to fight that war in numbers unprecedented since WWII, including many Cleveland public employees.  Cleveland has continued this policy towards its Ohio military reservists even after Ohio has continued to record one of the highest running totals of Global War on Terror service deaths in the nation.

10. In 1997 the Ohio legislature, consistent with R.C. 5903.02 and USERRA, added provisions to the Ohio Revised Code that made it illegal for collective bargaining agreements (hereinafter, "CBA") to contain provisions that reduced or eliminated the statutory PML benefit.  See R.C. 4117.10(A) and R.C. 5923.05(G) (originally designated R.C. 5923.05(F)).  In 2010, 2016 and in 2018 Cleveland compelled the Cleveland Police Patrolmen's Association (hereinafter "the CPPA"), the labor union to which the Lam belonged through [2017], to sign CBAs that reduced or eliminated Ohio their members' PML benefits.  The 2016 CBA made it ambiguous as to whether it reduced or eliminated the "differential pay supplement" for vulnerable Ohio junior enlisted reservists ordered to extended military service.  The current Cleveland CBA with the CPPA, a copy of which is attached to this Compliant as Plaintiff's Exhibit 1, by comparison, unambiguously strips all its Ohio reservist employees of their training bonus.  It also unambiguously

strips all their junior enlisted Ohio reservist employees of the protection of the differential pay supplement on any extended military service. The only PML benefit the Cleveland CBA with the CPPA provides any of its reservist employees is that its offers its junior enlisted Ohio reservist employees an annual PML benefit equal only to the amount of one month of differential pay supplement and only for one month per year. This CBA provision is so small and restrictive that it is unreasonable and clearly exhibits "anti-reservist animus", prejudice and discrimination in violation of R.C. 5903.02 (and as further defined in USERRA) under the circumstances alleged above. There is no state in America that denies its public employee reservists the differential pay supplement during a deployment. Cleveland's CBAs with Lam's former union contains the smallest, most restrictive PML benefit the undersigned is aware of.

10. The proposed class Defendant the Village of Granville also has chosen not to comply with the Ohio Paid Military Leave statute. It also has adopted its own military leave ordinance that is legally indistinguishable from the Cleveland military leave ordinance. Furthermore on its own website Granville has a published a section entitled "Form of Government." In this written document, published to all of the world, Granville declares, in relevant part

> The Village of Granville is a home rule municipal corporation that has been organized in accordance with the provisions of the Ohio Revised Code. The Village has adopted a Charter…In addition, the Mayor has all of the judicial and *military* power granted to the Mayors of municipal corporations by the laws of the state. The Vice-Mayor may perform the same duties in the absence of the Mayor.

http://www.granville.oh.us/form_of_government, *emphasis* added.

11. Lam joined the Ohio Army National Guard in 2004. Lam joined the Cleveland Police Department in 2008. Lam immediately began to request that he be paid his State PML during his field training and active duty with the National Guard. Cleveland, through its officers, employees and agents appointed over the Plaintiff, has always denied him his State PML. It has only ever offered him Cleveland's "differential pay supplement." Cleveland has told Lam he is not entitled to State PML pursuant to the Cleveland ordinance and its CBA with his former union. He has not been paid any of his State paid military leave since he became both a Cleveland permanent employee and a drilling military reservist. The Plaintiff expects to be both a Cleveland Police officer and a drilling member of the Ohio Army National Guard for years to come

## CLASS ACTION

## CLASS ACTION PREREQUISITES

13. Pursuant to the Ohio Civ.R. 23, the Plaintiff Lam brings this action on behalf of himself and all other members of a class defined as

> All individuals who are current permanent public employees of an Ohio municipality or unincorporated township and who are also drilling military reservists who have not been paid all the State paid military leave they have accrued pursuant to R.C. 5923.05, calculated from the time that individual became both a military reservist and the permanent employee of that Ohio city or unincorporated township, until the present.

14. The class is so numerous that joinder of all members of the class is impracticable. The class may consist of over five hundred members.

15. The Plaintiff also brings this action on behalf of himself and all other members of a sub-class defined as

> All individuals who are current permanent public employees of the City of Cleveland and who are also drilling military reservists who have not been paid all the State paid military leave they have accrued pursuant to R.C. 5923.05, calculated from the time that individual became both a military reservist and a permanent public employee of the city of Cleveland. This sub-class shall be referred to as the "Cleveland sub-class."

16. The sub-class is so numerous that joinder of all members of the sub-class is impracticable. The sub-class may consist of over two hundred and twenty-five members.

17. The Plaintiff brings this action against the Defendant itself, and against all other members of a Defendant class defined as

> All Ohio municipalities and unincorporated townships that have adopted or promulgated a local ordinance that directly or indirectly eliminates, reduces or limits in any way the State paid military leave benefit of any of their permanent public employees who are also drilling military reservists.

18. The Defendant class is so numerous that joinder of all members of the class is impracticable. Any Ohio municipality can join or leave this class easily, at any time. The mere existence of the class prevents the uniform enforcement of an Ohio general statute of statewide concern: the Ohio Paid Military Leave statute. The list of members to this proposed Defendant class is headed by: Cleveland, Cincinnati, Dayton, Akron, Parma and the Village of Granville. The knowledge and belief of Plaintiff's Counsel is that at least 20% to 30% of the municipalities of Ohio will belong to this class. These proposepd class Defendants have all chosen not to comply with the Ohio Paid Military Leave statute. They have all chosen to enact their own military leave ordinances, well after 1931. All of these ordinances are legally indistinguishable from the Cleveland military leave ordinance, and offer their

permanent public employees who are also drilling U.S. or Ohio military reservists similar, lesser PML benefit as the Cleveland ordinance, also in violation of R.C. 5903.02 and USERRA.

## COMMON QUESTIONS OF LAW AND FACT

19. There are questions of law and fact that are common to the classes and the sub-class, including but not limited to the following:

(a) Whether the Defendants' military leave ordinances violate the Ohio Constitution by legislating in subject matter reserved to the Ohio legislature by the Constitutions and laws of the United States and Ohio, contrary to the Ohio legislature on a general matter of military policy concerning the Ohio National Guard and organized militia as expressed by the Ohio law on State paid military leave for military reservists;

(b) Whether the Defendants' military leave ordinances violate the United States Constitution by legislating in subject matter reserved to the Federal legislature by the Constitution and laws of the United States, contrary to the Federal legislature on a general matter of military policy concerning Federal military reservists and Ohio military reservists and organized militia and their rights under USERRA and under R.C. 5903.02;

(c) Whether the Defendants' ordinances are cloaked in the mantle of authority of the Home Rule provision of the Ohio Constitution;

(d) Whether the Ohio PML statute is a general statute that concerns the general welfare of all Ohio workers;

(e) Whether the Defendants' PML ordinances are local self-government or local police powers;

(f) Whether the Ohio PML statute is a general statute of statewide concern;

(g) Whether the Defendants' PML ordinances contradict or interfere with the statewide enforcement of the Ohio PML Statute;

(h) Whether there is an actual controversy between the parties caused by the Defendants' refusal to pay the named Plaintiff his Ohio PML pursuant to R.C. 5923.05;

(i) Whether the Defendants' Ordinances deny the named Plaintiff and potential class members their Ohio PML benefit in any way.

(j) Whether the provision of the various Cleveland CBAs signed with the named Plaintiff's Unions that limit or eliminate the Ohio PML benefits are illegal.

20. The named Plaintiff will fairly and adequately protect the interests of the class members. His claims are typical of the claims of the class. The named Plaintiff's interests are not antagonistic to the interests of the other potential Plaintiff class members.

21. The named Defendant will fairly and adequately protect the interests of the proposed Defendant class members. Cleveland's claims and defenses are typical of the claims and defenses of the proposed Defendant class. Cleveland's interests are not antagonistic to the interests of the other potential Defendant class members. Cleveland will fairly and adequately protect the interests of the Defendant class members.

22. The questions of law and fact that are common to members of the classes predominate over any questions affecting only individual members. The primary questions pertinent to the issue of liability, as to all potential class members, are whether they were paid all of their Ohio PML pursuant to the laws of Ohio, by the Defendants, during the time they have been both permanent public employees and drilling military reservists. The determination centers on the behavior of the Defendants. These questions common to all the Classes predominate over any questions affecting only individual members of the Classes.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Adjudication of class members' individual claims would otherwise require hundreds of individual suits with concomitant duplication of costs, attorneys' fees and demands upon court resources. If the individual class members were required to pursue their claims through separate, individual suits, the potential for recovery would be outweighed by the high cost of investigation, discovery and expert testimony related to the liability of the Defendants.

## CAUSES OF ACTION

### COUNT I: Complaint for Declaratory Judgment

24. The Plaintiff incorporates the allegations contained in paragraphs 1 through 23, as if fully rewritten below.

25. The Plaintiff makes a complaint for declaratory judgment pursuant to RC Chapter 2721 and Rule 57 of the Ohio Rules of Civil Procedure.

26. He has been a permanent public employee of Cleveland and a member of the uniformed services, as those terms are defined in the Ohio law concerning State paid military leave for Ohio reservists, since 2008. He has requested and should have been paid Ohio PML in the amount of one (1) month of his Cleveland salary, every year, since 2008.

27. Cleveland and the proposed class Defendants, through their elected officials, and agents, employees and officers appointed over them, have wrongfully refused the Plaintiff and the proposed class Plaintiffs this employee benefit, in a continuing manner. Cleveland claims it can do so following its own Ordinance, §171.57 of the Cleveland Codified Ordinances, and pursuant to its CBAs with his labor union. The proposed class Defendants all justify their actions on their own "differential" ordinances.

28. Thus an actual controversy has arisen between the Plaintiff and proposed class Plaintiffs and Cleveland and the proposed class Defendants. Lam has been damaged by this controversy by deprivation of his Ohio paid military leave for several years, and he plans to continue to serve as a public employee and military reservist for many years.

COUNT II: <u>Violation of R.C. 5903.03 (as defined in USERRA, Denying a Reservists the benefit of an employment and re-employment right accrued during the performance of his military service)</u>

29. The Plaintiff incorporates paragraphs 1 through 28 into this paragraph as if fully rewritten below.

30. Cleveland and the proposed class Defendant(s) are wrongfully enforcing local ordinances, as that phrase is defined in §4302(a) & (b) of USERRA, in a manner

that reduces and eliminates the Plaintiff's Ohio PML benefit and grievously damages him. The enforcement of these municipal military leave ordinances cause the named plaintiffs and the proposed class plaintiffs a disparate impact and denies them a benefit of their employment, their Ohio paid military leave benefit, within the meaning of R.C. 5903.02 and USERRA.

31. Therefore the Plaintiffs invoke this Court's jurisdiction over this matter under R.C. 5903.02.

33. This violation has caused Lam monetary damages as described above and below.

COUNT III: <u>Violation of R.C. 5903.02 (as described in USERRA: Denying Reservists on military leave rights and benefits provided by Cleveland to other similar employees on comparable furloughs or leave of absences under their CBA with the named plaintiffs' union; specifically providing only differential pay to reservists on military leave compared to providing paid leave to other employees on jury duty, at least)</u>

34. The Plaintiff incorporates paragraphs 1 through 33 into this paragraph as if fully rewritten below.

35. Cleveland has a CBA with the union that formerly represented the named Plaintiff and similar agreements with the unions representing the proposed class members of the proposed Cleveland Plaintiff sub-class. These CBAs, and Cleveland's municipal military leave ordinance, restrict Cleveland reservists who are "…temporarily called to active duty (e.g. summer training)…" to a leave of absence with restricted pay ("…the difference between his regular pay and his total military pay…")"….for a period not to exceed thirty-one (31) days in any calendar year…" Furthermore during this time the only benefits reservists are apparently allowed to accumulate are "…vacation and sick

leave with pay credit during the period of [military] leave." A copy of this current CBA is attached to this complaint as Exhibit 1.

36. This same CBA provides other similar employees on Jury Duty a paid leave of absence. It provides other similar employees on a comparable furlough or leave of absence from their normal duties for court appearances, prosecutor reviews and other court-related matters (hereinafter collectively "court appearances") paid leave also. See Exhibit 1.

37. Therefore not only does the Cleveland Ordinance cause a disparate impact to the Plaintiffs, compared to other permanent public employee Ohio military reservists not employed by Cleveland (or by a municipality with a similar differential-pay military leave ordinance); but it also denies them the paid leave benefit, at least, Cleveland provides to other employees on Jury duty or during court appearances.

38. The named Plaintiffs and the proposed class plaintiffs are entitled to this same paid leave benefit for their military leave as Cleveland provides other employees for any comparable furloughs or leaves of absence, in accordance with §4316(b)(1) of USERRA. Cleveland's CBAs with the named Plaintiffs and with the unions representing the members of the Cleveland sub-class therefore violate R.C. 5903.02(in addition to being illegal under the Ohio law governing CBAs). The named Plaintiffs and the members of the Cleveland sub-class are damaged by these violations of the Revised Code, as described above and below.

### REQUESTED RELIEF

WHEREFORE Lam requests judgment against the Defendants as follows:

1. That the Court issue a Declaratory Judgment in his favor, declaring that: the Defendants Ordinances are not an act of municipal self-government under the Home Rule clause of the Ohio Constitution; that they are an unconstitutional attempt to regulate the training of the State militia contrary to express written provisions of the Ohio Constitution; that they are an unconstitutional attempt these cities to regulate the training of the State militia and Federal reservists contrary to express written provisions of U.S. Constitution; that they are not an act of municipal local self-government affecting only how these cities pay their own employees for their services, instead they are an attempt to deprive Ohio and U.S. military reservists of an employment benefit they accrue outside the occasion, hours and place of their civilian employment by these cities, often or usually outside their municipal boundaries, while engaged in State or Federal military service; that the Plaintiffs are entitled to compensatory damages from the Defendant and the proposed class Defendants in the amount of all of one month of their civilian salaries for each year they were denied their state military leave, including pre-judgment interest, in accordance with the Ohio Revised Code and with §4323(d)(1) of USERRA;

2. An award of punitive damages in the minimum amount of $25,000.00, the exact amount to be determined by this Honorable Court or an award of "double damages" in accordance with R.C. 5903.02, as specified in §4323(d)(1)(C) of USERRA;

3. An award of their attorney's fees in pursuing this action in a gross amount to be determined by the Court, pursuant to Ohio common law or R.C. 5903.02, as specified in §4323(h)(2) of USERRA;

4. And any other such relief as this Court deems just and proper.

Respectfully submitted,

 /s/ Daniel G. Morris
Daniel G. Morris (0040449)
The Law Offices of D.G. Morris, LLC
4205 Woodbridge Ave.
Cleveland, Ohio  44109
Telephone: (216) 965-1325
Facsimile: (216) 961-6462
Email:  dmorrislaw18@ameritech.net
Attorney for the Plaintiff

## JURY DEMAND

The Plaintiff demands a trial by jury of all such issues properly triable to a jury, in accordance with the Ohio and local Rules of Civil Procedure and the common law of Ohio.

 /s/ Daniel G. Morris
Daniel G. Morris, Esq.
Attorney for the Plaintiff
